UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
WYNTON SHARPE,                                              :
                                                            :     **MEMORANDUM**
                                       Plaintiff,           :     **DECISION AND ORDER**
                                                            :
            - against -                                     :     11 Civ. 5494 (BMC)
                                                            :
CITY OF NEW YORK, et al.,                                   :
                                                            :
                                                            :
                                       Defendants.          :
                                                            :
----------------------------------------------------------- X

**COGAN,** District Judge.

Plaintiff, a former Assistant District Attorney, brought this suit pursuant to 42 U.S.C. § 1983, asserting claims in connection with his May 2011 termination by the Kings County District Attorney's Office ("KCDAO"). Defendants have moved to dismiss plaintiff's amended complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

The following facts are taken from the amended complaint and are assumed true for purposes of this motion. See Bryant v. New York State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012).

Plaintiff was hired as an Assistant District Attorney in the KCDAO on or about November 11, 2004. Plaintiff was not a political appointee; he was hired based on merit. At the time that plaintiff was hired, defendant Charles Hynes, the Kings County District Attorney, knew plaintiff's father, Wellington Sharpe ("Wellington"), and was aware that Wellington had previously been a candidate for public office in Brooklyn. Plaintiff never kept his family

relationship with Wellington a secret.

Throughout his employment at the KCDAO, plaintiff's job performance was satisfactory. In October 2009, plaintiff was transferred to the Red Zone General Trial Bureau ("Red Zone"), which was responsible for a specific geographic area of Brooklyn.

At some point prior to plaintiff's assignment to Red Zone in 2009, Kevin Parker, a New York State Senator from Brooklyn, was arrested for several crimes, including assault, and ultimately indicted by a Grand Jury. Red Zone handled the prosecution of the case. Although he worked in Red Zone, plaintiff was not involved in Parker's prosecution, nor was he aware of any facts relating to the prosecution.

Plaintiff's father, Wellington, was a candidate in the 2010 State Senate race and was running against Parker. Wellington had run unsuccessfully against Parker on two occasions prior to 2010. Between his assignment to Red Zone in October 2009 and August 11, 2010, plaintiff was not employed by or involved in his father's campaign for State Senate in any way. Plaintiff alleges that Hynes and others in the KCDAO knew that Wellington was running against Parker in the 2010 State Senate race.[1]

On August 11, 2010, defendant James Leeper, the Bureau Chief of Red Zone, asked plaintiff if Wellington was his father, and plaintiff replied "yes." Leeper told plaintiff to report to defendant Amy Feinstein's office.[2] Feinstein was the Chief Assistant District Attorney. Feinstein also asked if Wellington was plaintiff's father and, after plaintiff confirmed that he was, Feinstein placed plaintiff on immediate suspension without pay or benefits. Feinstein did

---

[1] According to plaintiff, the KCDAO did not have any policy, training, or supervision that required him to inform the KCDAO that his father was running for political office. Nor, from 2004 until 2011, were any employees of the KCDAO asked if they were related to or supported of a specific political candidate. Further, plaintiff's amended complaint cites several provisions from the KCDAO's handbook for Assistant District Attorneys concerning political activities and conflicts of interest with which, plaintiff maintains, he complied.

[2] At various points in the amended complaint, Feinstein is incorrectly referred to as "Weinstein."

not explain her decision, reference any violation of policy, or give plaintiff an opportunity to be heard.

The next day, Leeper appeared before Justice Neil Firetog of the New York Supreme Court in People v. Kevin Parker. Leeper informed Justice Firetog that:

> [T]he People learned just yesterday afternoon that an assistant district attorney by the name of Wynton Sharpe, who works in the Red Zone . . . his father is running in the primary against Senator Parker. He did not reveal that in time – I can't explain why he did not reveal that . . . .
>
> We do not know why Mr. Sharpe did not disclose this to myself or anybody else in the office, that his father was running against the defendant in this matter. If nothing else, it was profoundly flawed judgment that Mr. Sharpe did not disclose that to either myself or anybody else in the office. [3]

Leeper requested that a Special Prosecutor be appointed in the People v. Parker matter and advised that the KCDAO was seeking the appointment of a Special Prosecutor to investigate plaintiff's failure to disclose the potential conflict of interest.

On August 17, 2010, a Special District Attorney was appointed to prosecute the Parker case. That same day, Feinstein advised plaintiff that the Special District Attorney had also been appointed to review plaintiff's conduct and that the KCDAO would decide what action was appropriate when the inquiry was complete. Plaintiff cooperated with the Special District Attorney's investigation. Then, on September 28, 2010, the Special District Attorney informed plaintiff that the investigation had been concluded and that no criminal charges would be brought against him.

The next day, Feinstein refused plaintiff's request for reinstatement and informed

---

[3] Although the amended complaint quotes Leeper's statements during the August 12, 2010 proceedings in People v. Parker, the transcript of those proceedings is not attached to the amended complaint. It was, instead, submitted as an exhibit in support of defendants' motion in order to correct an immaterial quotation error in the amended complaint. The Court considers the transcript in the context of this motion to dismiss because plaintiff both quotes the underlying proceedings in the amended complaint and bases his reputational injury claims in part on Leeper's statements in those proceedings. Consequently, the transcript may be considered on a Rule 12(b)(6) motion as either incorporated by reference or integral to the complaint. See generally Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).

plaintiff that he would be suspended with pay until the KCDAO completed its own internal review. In a subsequent correspondence, Feinstein explained that, unlike the Special District Attorney's investigation into possible criminal wrongdoing, the KCDAO was conducting a disciplinary review within its purview as plaintiff's employer. Plaintiff objected to the internal review, arguing that the KCDAO had not indicated at any time since plaintiff had been suspended that he would be subject to such review.

Several days later, Kin Ng, Director of Training in the KCDAO, requested that plaintiff appear for an inquiry regarding his failure to disclose his relationship with his father in the People v. Parker matter and advised plaintiff that if he chose not to appear for the inquiry, he could be subjected to additional disciplinary sanctions by the KCDAO. Ng scheduled the interview for October 15, 2010. However, on that day, before he could be interviewed, plaintiff was arrested following a dispute with his then-girlfriend and was therefore unable to attend the interview. He was charged with assault, among other crimes, and the KCDAO appointed a Special Prosecutor to handle these charges.

Ng informed plaintiff that it was in his best interests to put off the interview until resolution of the criminal charges. On March 4, 2011 the charges were dismissed and sealed pursuant to New York law. Plaintiff then contacted Ng and requested an interview.

Ng, along with John O'Mara of the KCDAO, interviewed plaintiff in connection with the KCDAO's internal disciplinary investigation on April 8, 2011. At the interview, plaintiff requested reinstatement with full back pay, a promotion to a position which he felt he would otherwise have achieved if not for the KCDAO's alleged wrongful treatment, and a statement by the KCDAO to counter previous statements made by KCDAO employees regarding plaintiff's actions. Because Ng and O'Mara were apparently not aware of Leeper's statements in court

about plaintiff's conduct in the Parker matter, they asked plaintiff to provide copies of the relevant transcript and any news accounts referencing KCDAO statements about plaintiff. Shortly after the interview, plaintiff provided these items and asked that the KCDAO reinstate him and clear his name.

When plaintiff did not hear from Ng about the status of the investigation, he informed Ng that he would file suit to challenge what he viewed as his wrongful suspension and termination. Then, by letter dated May 27, 2011, Feinstein informed plaintiff that he was being terminated immediately.

## **DISCUSSION**

Defendants move to dismiss plaintiff's three-count amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In Count One, plaintiff alleges that Hynes, Leeper and Feinstein deprived him of his due process, equal protection, and intimate familial association rights under the First and Fourteenth Amendments in violation of § 1983.[4] Count Two alleges municipal liability on the part of the City of New York and the KCDAO under § 1983. Finally, in Count Three, plaintiff alleges that Hynes, Leeper, and Feinstein failed to intervene to prevent a deprivation of plaintiff's constitutional rights.

On a motion to dismiss under Rule 12(b)(6), the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. Harrington v. Cnty. of Suffolk, 607 F.3d 31, 33 (2d Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949-50 (2009)). The Court must also draw "all reasonable inferences in the plaintiff's favor." Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106, 108 (2d Cir. 2010). Nevertheless, the

---

[4] In response to defendants' motion, plaintiff has withdrawn the portion of this claim predicated upon the alleged deprivation of procedural due process.

5

factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). In other words, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Id. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

I. The Equal Protection Claim

Defendants argue that the portion of plaintiff's § 1983 claim in Count One predicated on a denial of equal protection should be dismissed because plaintiff is proceeding on a "class of one" theory of equal protection and such claims are unavailable in the context of public employment.[5] Plaintiff, however, has clarified in his opposing papers that he "is not proceeding based on [a] 'Class of One' theory of Equal Protection" and, consequently, plaintiff has declined to respond to the arguments in defendants' motion with regard to this point. This is just as well, as the law is clear that public employees may not proceed on a class of one theory. See Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 598, 128 S. Ct. 2146, 2151 (2008).

But having withdrawn his "class of one theory," it is not clear what plaintiff's theory of an equal protection violation is. In his original complaint, plaintiff clearly pled a race-based equal protection claim based on his being African-American. He dropped the allegations of racial discrimination in his amended complaint, but kept the equal protection allegations, as well as the original complaint's references to the parties' races. In addition, the amended complaint

---

[5] "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class," courts "have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). To state a "class of one" equal protection claim, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

explicitly seeks a declaratory judgment against defendants stating that their "actions were part of a pattern and practice of unlawful, systemic discrimination, and/or retaliation, based on race, color" and other factors, all of which is also a carry-over from the original complaint.

Having eschewed a class of one theory, there are only two other possible equal protection theories, and plaintiff has pled neither of them. First, courts in the Second Circuit have recognized equal protection claims predicated on the "selective enforcement" theory. See, e.g., Frank Sloup & Crabs Unlimited, LLC v. Loeffler, 745 F. Supp. 2d 115, 130 (E.D.N.Y. 2010). In order to prevail on a "selective enforcement" equal protective claim, a plaintiff must show "(1) that he was treated differently from others similarly situated, and (2) 'that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Gentile v. Nulty, 769 F. Supp. 2d 573, 578 (S.D.N.Y. 2011) (quoting Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007)).[6]

There is no such claim here. Specifically, "demonstrating that a plaintiff has been treated different from similarly situated individuals is the *sine qua non* of a . . . selective enforcement violation." Goldfarb v. Town of West Hartford, 474 F. Supp. 2d 356, 368 (D. Conn. 2007). For employees to be "similarly situated," they must be, at a minimum, "similarly situated in all

---

[6] There is confusion within this Circuit as to the distinction between a "class of one" and a "selective enforcement" equal protection claim and, as a result, the law in this Circuit is unsettled as to whether public employees' claims asserted under the "selective enforcement" theory can survive in light of Engquist. See Gentile, 769 F. Supp. 2d at 579 ("While some courts within this Circuit have held that the Supreme Court's decision in Engquist bars public employees from asserting selective enforcement claims, others have generally treated selective enforcement and 'class of one' theories as 'distinct theories with distinct elements of proof.'"). The Second Circuit has not resolved this confusion. See Kamholtz v. Yates Cnty., 350 F. App'x 589, 591 (2d Cir. 2009) (summary order) (assuming that a public employee plaintiff's "selective enforcement" claim was not precluded by Engquist because plaintiff had, in any case, "failed to sufficiently state his claim."). To make matters worse, some courts require the same elements to state a "selective enforcement" claim as are required under the "class of one" theory. See Felix v. Gotham Real Estate Corp., No. 12-cv-4559, 2012 WL 4563097, at *3 (E.D.N.Y. Oct. 2, 2012).

This Court shares the Gentile court's skepticism that public employee plaintiffs may maintain "selective enforcement" claims in light of Engquist. See Gentile, 769 F. Supp. 2d at 579. It is not necessary to resolve this issue, however, because plaintiff has failed to adequately plead a "selective enforcement" claim, to the extent his equal protection claim is construed as one.

7

material respects." Emmerling v. Town of Richmond, No. 09-CV-6418, 2010 WL 2998911, at *12 (W.D.N.Y. July 27, 2010).[7] The amended complaint contains no factual allegations that plausibly suggest that plaintiff was "similarly situated" to other KCDAO employees. This is hardly surprising given the unique facts giving rise to plaintiff's claims – it cannot be often that the KCDAO prosecutes the political rival of an assistant's family member.

Thus, nowhere does plaintiff allege that any other KCDAO employees were related to someone who had a personal interest in the outcome of a KCDAO prosecution as plaintiff's father arguably did in Parker prosecution. See id. at *13 (rejecting, in dicta, plaintiff's allegation that he was "similarly situated" to other municipal employees as implausible in light of the numerous differences between plaintiff's and the comparators' jobs, as well as other circumstances).[8] Because plaintiff has not alleged that there were other employees "similarly situated" to him, let alone that defendants treated him differently from such employees, plaintiff has failed to state a "selective prosecution" equal protection claim. See Hirch v. Desmond, No. 08-CV-2660, 2013 WL 494614, at *7 (E.D.N.Y. Feb. 7, 2013) (concluding that a prisoner's equal protection claim, whether construed as a "selective prosecution" or a "class of one" claim, fails as a matter of law because the complaint "does not identify any similarly-situated individuals – let alone any similarly-situated inmates that were treated differently").

The last hope for plaintiff's equal protection claim is for him to rely on his membership in a protected class. Cf. Missere v. Gross, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011) ("A

---

[7] There is some disagreement as to the meaning to "similarly situated" in the context of selective enforcement claims. See Gentile, 769 F. Supp. 2d at 580. The Court need not take sides in this disagreement because, even applying the less stringent standard, plaintiff has failed to plead a claim.

[8] All the amended complaint alleges is that, during plaintiff's employment, "no employees of the [KCDAO] were asked if they were related to or supporters of a particular political candidate." This allegation is insufficient to plead a "selective enforcement" claim for two reasons. First, plaintiff is complaining about being disciplined by the KCDAO, not about being asked about his relationship with his father. Second, the allegation oversimplifies plaintiff's circumstances; not only was he related to a political candidate, but that candidate was running in an election against the target of a prosecution being handled by plaintiff's own bureau within the KCDAO.

8

plaintiff who does not claim to be a member of a constitutionally protected class may bring an Equal Protection claim on one of two theories: selective enforcement or 'class of one.'"). Although plaintiff has plead that he is an African-American and the individual defendants are all white, at no point does plaintiff allege that he was terminated, subjected to discipline, or otherwise treated differently from other KCDAO employees because of his race. To the extent plaintiff states an equal protection claim on the grounds of race, his claim must fail because he "fail[s] to allege that any differential treatment was based on [his] membership in a protected class." Seabrook v. City of New York, 509 F. Supp. 2d 393, 400 n.4 (S.D.N.Y. 2007).

## II.     The Due Process Claim

Although plaintiff does not clearly denominate the basis for the due process claim in his amended complaint, the parties agree that plaintiff is asserting a claim under the "stigma plus" theory of due process.

"A person's interest in his or her good reputation alone . . . is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983[;]" however, the Second Circuit recognizes that "[l]oss of one's reputation can . . . invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment." Patterson v. City of Utica, 370 F.3d 322, 329-30 (2d Cir. 2004). Specifically, "[f]or a government employee, a cause of action under § 1983 for deprivation of a liberty interest without due process of law may arise when an alleged government defamation occurs in the course of dismissal from government employment." Id. See also DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003) ("'Stigma plus' refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process.").

To make out a "stigma-plus" claim in the context of termination from government employment, a plaintiff must allege facts supporting three elements. First, a plaintiff must plead that the government made stigmatizing statements of alleged fact about him which call into question his "good name, reputation, honor, or integrity." Segal v. City of New York, 459 F.3d 207, 212 (2d Cir. 2006) (internal citations and quotation marks omitted). See also Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630-31 (2d Cir. 1995) (holding that statements that "denigrate [an] employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" implicate protected interests). "A plaintiff generally is required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false." Patterson, 370 F.3d at 330. Second, plaintiff must allege facts showing that the stigmatizing statements were made public. Segal, 459 F.3d at 212. Third, plaintiff must allege facts showing "that the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." Id.[9]

Here, plaintiff alleges that his personal and professional reputation were damaged by the statements made by Leeper in the Parker proceedings, including that plaintiff did not disclose his relationship with his father to the KCDAO and that it was "profoundly flawed judgment" for plaintiff not to do so, and by an affirmation filed by Hynes in support of the KCDAO's application for a Special Prosecutor. Additionally, the amended complaint discusses "references to [plaintiff] in the press which were made by" Leeper, as well as "news accounts which

---

[9] Defendants rely on an alternative formation of the "stigma-plus" standard, which requires a plaintiff to "establish 1) that [he] w[as] defamed; and 2) that the defamation occurred in the course of the termination of governmental employment or was coupled with a deprivation of a legal right or status." Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002). The distinction is immaterial.

10

reference sources from the [KCDAO] speaking about" plaintiff.

Defendants argue that plaintiff has failed to state "stigma-plus" due process claim for three reasons. First, defendants contend that plaintiff cannot base his claim on expressions of opinion, such as Leeper's statement that plaintiff's failure to disclose his relationship with his father evinced "profoundly flawed judgment," because such statements are incapable of being proved false. Second, defendants argue that an attorney's statements in the context of judicial proceedings are privileged and cannot support plaintiff's claim. Third, defendants contend that plaintiff's "stigma-plus" claim is inadequate because plaintiff has failed to avail himself of the appropriate post-deprivation process. Defendants are largely correct.

The law is clear that a statement that "was not false . . . cannot form the basis for a stigma plus claim, however stigmatizing it might appear to be." Haiyan v. Hamden Pub. Sch., 875 F. Supp. 2d 109, 131 (D. Conn. 2012) (quoting DiBlasio v. Novello, 413 F. App'x 352, 356 (2d Cir. 2011)). Consequently, courts have held that "a statement of opinion, rather than fact . . . is not actionable as a stigmatizing remark." Wiese v. Kelley, No. 08-CV-6348, 2009 WL 2902513, at * 6 (S.D.N.Y. Sept. 10, 2009). See also Strasburger v. Bd. of Educ., 143 F.3d 351, 356 (7th Cir. 1998) ("True but stigmatizing statements that preclude further government employment do not support this type of claim. Nor do statements of opinion, even stigmatizing ones, if they do not imply false facts.").[10]

Here, Leeper's statement that it was "profoundly flawed judgment" for plaintiff not to disclose his relationship with his father to the KCDAO is a statement of opinion. The statement

---

[10] As defendants point out, federal courts in New York often look to New York defamation law when analyzing a "stigma-plus" claim, see, e.g., Pisani v. Westchester Cnty. Health Care Corp., 424 F. Supp. 2d 710, 718 (S.D.N.Y. 2006) ("Establishing defamation in the § 1983 context is no different than under New York State law."), and New York law provides that "[e]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." Mann v. Abel, 10 N.Y.3d 271, 276, 856 N.Y.S.2d 31 (2008).

11

consisted of Leeper's personal assessment of plaintiff's actions rather than a factual representation. Accordingly, it cannot form the basis of a "stigma-plus" claim. See Apionishev. Columbia Univ., 09 Civ. 6471, 2012 WL 208998, at *10 (S.D.N.Y. Jan. 23, 2012) (dismissing plaintiff's defamation claims, in part, because the statements "amount to no more than a former employer's protected opinion regarding an employee's performance and the cause of his termination"); Edsell v. Indep. Freightway, Inc., No. 94-CV-227, 1995 WL 375827, at *4 (N.D.N.Y. June 16, 1995) ("As a general rule, statements by an employer about an employee's work performance are expressions of opinion.").[11]

Plaintiff argues, though, that Leeper's statement contained false factual representations regarding the KCDAO's knowledge of plaintiff's relationship with his father and plaintiff's failure to disclose the fact that his father was running in the primary against Parker. Further, plaintiff argues that Leeper directly called his professionalism into doubt by stating that "the relationship between Assistant District Attorney Sharpe through his father, Wellington Sharpe, has compromised our position that in order to remove the appearance of impropriety, we are obligated to seek the appointment of a special district attorney to prosecute the case." And, in connection with the appointment of a Special Prosecutor, defendant Hynes submitted an affidavit.

Even if these additional statements could be considered constitutionally stigmatizing under the above-cited authorities, they cannot support a "stigma-plus" claim because "[s]tatements made in the course of court proceedings are absolutely privileged under New York

---

[11] Additionally, as in Esposito v. Metro-North Commuter R.R. Co., 856 F. Supp. 799, 804 (S.D.N.Y. 1994), Leeper's "statement about plaintiff – that he had made an inexcusable error in judgment . . . – contains no accusations of dishonesty, illegality, or immorality . . . [and] cannot fairly be read as a pervasive indictment of plaintiff's ability to do his job. It merely asserted that in one instance, he made an error in judgment, albeit a very serious one, and made no assessment of his overall competence. Thus, standing alone, defendant's statement is not sufficiently stigmatizing to ground a constitutional claim."

12

common law." Conte v. Newsday, Inc., 703 F. Supp. 2d 126, 146 (E.D.N.Y. 2010) (citing Martirano v. Frost, 25 N.Y.2d 505, 507, 307 N.Y.S.2d 425(1969) ("[A] statement, made in open court in the course of a judicial proceeding, is absolutely privileged if, by any view or under any circumstances, it may be considered pertinent to the litigation."))[12] This privilege extends to judges, jurors, parties, witnesses, and attorneys. Frierson-Harris v. Hough, 05-CV-3077, 2006 WL 298658, at *7 (S.D.N.Y. Feb. 7, 2006) (applying the New York privilege to dismiss a claim under § 1981). See also Imbler v. Pachtman, 424 U.S. 409, 430, 96 S. Ct. 984, 995 (1976) ("activities [which] were intimately associated with the judicial phase of the criminal process" were protected by absolutely immunity in claim arising under § 1983); Schrob v. Catterson, 948 F.2d 1402, 1417 (3d Cir. 1991) (commenting, in the context of a Bivens action, that "[p]rosecutors and other lawyers were absolutely immune at common law for making false or defamatory statements in judicial proceedings").

Here, both Leeper's and Hynes' statements were made during the Parker criminal proceedings in connection with the KCDAO's prosecution of the case. The statements therefore fall squarely within the scope of the privilege that attaches to statements made in the course of judicial proceedings. Plaintiff has not addressed defendants' argument and, thus, has not put forward any reason why the statements at issue are actionable notwithstanding their immunity at common law.[13]

Plaintiff, however, attempts to circumvent the privilege for statements made in the course of judicial proceedings by arguing that the amended complaint "also alleges that Defendant [sic]

---

[12] Although plaintiff's claim arises under federal constitutional law and not state law, "Congress did not intend § 1983 to abrogate immunities 'well grounded in history and reason.'" Pinaud v. County of Suffolk, 52 F.3d 1139, 1147 (2d Cir. 1995) (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 268, 113 S. Ct. 2606, 2612-13 (1993)). The Supreme Court has recognized the immunity for statements made in judicial proceedings is "well grounded in history and reason" held that "§ 1983 did not abrogate the absolute immunity existing at common law." Briscoe v. LaHue, 460 U.S. 325, 334, 103 S. Ct. 1108, 1115 (1983) (internal quotation marks omitted).

[13] Separately, plaintiff has also failed to allege that defendant Feinstein made any public statements concerning him.

published more false statements to the media – <u>outside of the court and outside of the judicial process</u> where absolute immunity would not be a factor." (emphasis in original). Although plaintiff conclusorily alleges that the KCDAO made statements to the media, at no point does the amended complaint make any allegations concerning what those statements were, who made the statements, when they were made, or how they were stigmatizing or false. Accordingly, plaintiff has failed to plead facts sufficient to show his entitlement to relief. See Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65. See also Biro v. Conde Nast, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) (observing that, in the context of a defamation claim, Rule 8 "requires that each pleading be specific enough to afford defendant sufficient notice of the communications complained of to enable him to defend himself.") (internal quotation marks omitted).[14]

Lastly, the Second Circuit has held that the availability of "a reasonably prompt, post-termination name-clearing hearing satisfies constitutional due process as long as the procedures afforded at such a hearing are sufficient to protect the employee's reputational and professional interests." Anemone v. Metro. Transit Auth., 629 F.3d 97, 121 (2d Cir. 2011). For an at-will government employee, like plaintiff, "an Article 78 proceeding provides the requisite post-deprivation process – even if [plaintiff] failed to pursue it." Id. Although plaintiff argues that an Article 78 proceeding would not have been sufficient to address his reputational injury, his argument is contrary to Second Circuit law. Therefore, plaintiff's due process claim is dismissed.

## III. The Interference with Intimate Association Claim

Plaintiff asserts a claim under the Fourteenth Amendment for interference with his

---

[14] Moreover, the KCDAO's out-of-court statements about the Parker litigation, if it even made any, are privileged under New York law "to the extent that they represent fair and true reports of what occurred in the proceeding." Long v. Marubeni Am. Corp., 406 F. Supp. 2d 285, 294 (S.D.N.Y. 2005). The Court cannot determine whether this privilege applies, however, because plaintiff has failed to identify any purportedly stigmatizing out-of-court statements.

14

substantive due process right in his relationship with his father.[15] The Supreme Court has "long recognized" a substantive due process right in certain types of relationships, see Roberts v. United States Jaycees, 468 U.S. 609, 618-19, 104 S. Ct. 3244, 3250 (1984), and the Second Circuit has recognized the relationship between an adult and his father as one within the scope of protection afforded by the due process clause. See Patel v. Searles, 305 F.3d 130, 136 (2d Cir. 2002).

The Second Circuit has not clearly ruled on whether intent to interfere with the intimate association on the part of a defendant is required as part of a claim under the Fourteenth Amendment. However, almost all of the circuit courts that have addressed this issue have held that intent is a necessary element of such a claim. See Campos v. Weissman, No. 07-cv-1263, 2011 WL 1204839, at *2 (N.D.N.Y. Mar. 29, 2011) (collecting cases). District courts within the Second Circuit have consistently held that intent to interfere is a necessary element. Id. See also Laureano v. Goord, No. 06 Civ. 7845, 2007 WL 2826649, at *12 (S.D.N.Y. Aug. 31, 2007) (report & recommendation) ("There is a cognizable distinction between a state actor that intentionally targets the intimate associations of a person, which is a protected right in this circuit, and circumstances . . . whereby a state actor allegedly commits actions that indirectly affect those relationships. Were this Court to recognize the latter, it would authorize innumerable additional individual actions by family members of adult victims of state actions."), adopted at 2007 WL 2852770 (S.D.N.Y. Sept. 28, 2007).

Instead of pleading any facts to show that defendants intended to interfere with the

---

[15] Plaintiff also asserts this claim under the First Amendment. However, because plaintiff does not assert that he was retaliated against by defendants for any his father's First Amendment-protected actions, his claim is properly analyzed as a due process claim under the Fourteenth Amendment. See Garten v. Hochman, 08-cv-9425, 2010 WL 2465479, at *4 (S.D.N.Y. June 16, 2010) ("Where the intimate association right at issue is tied to familial relationships and is independent of First Amendment retaliation concerns, however, the Second Circuit has employed an analysis under the framework of the Fourteenth Amendment right to substantive due process.").

15

paternal relationship, plaintiff makes a single, conclusory allegation that defendants "intended to place a restriction on plaintiff's relationship and association with his father." Plaintiff contends that defendants' intent can be inferred from the fact that the KCDAO did not give him a reason or explanation, such as a violation of policy, for its actions and the fact that plaintiff was suspended, investigated, and ultimately terminated. These allegations do not, however, plausibly suggest that defendants intended to interfere with plaintiff's relationship with his father, especially in light of the competing conclusion, which is supported by Leeper's statement and the other allegations in the amended complaint, that the KCDAO disciplined plaintiff in order to avoid the appearance of impropriety in its prosecution of Parker. See Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Thus, plaintiff has pled no plausible factual allegations as to why defendants would seek to intentionally interfere with his relationship with his father, and, indeed, such a theory is fundamentally inconsistent with his description of what occurred. The clear inference from the allegations in the amended complaint is that defendants were embarrassed by their own failure to realize that plaintiff's position could jeopardize their prosecution of Parker, and rather than acknowledge their own failure to address that issue before initiating prosecution, they made plaintiff the scapegoat for not "reporting" to them something they already knew. That would be nasty politics and poor personnel management, and it might conceivably (although speculatively) injure plaintiff's relationship with his father, but any such injury would be the result, not the intent, of defendants' efforts to shift the blame. Accordingly, plaintiff's intimate association claim is dismissed.

## IV. Plaintiff's Remaining Claims

Because the Court dismisses plaintiff's underlying constitutional claims, his remaining claims must also be dismissed. Absent an underlying constitutional violation, a district court need not address the possibility of municipal liability. See Segal, 459 F.3d at 219. Similarly, the absence of any underlying constitutional violations requires dismissal of plaintiff's failure to intervene claims. See D'Attore v. City of New York, No. 10 Civ. 6646, 2013 WL 1180395, at *6 (S.D.N.Y. Mar. 15, 2013).

## CONCLUSION

Defendants' motion to dismiss for failure to state a claim [11] is granted and the amended complaint is dismissed. See Faulkner v. Verizon Communications, Inc., 189 F. Supp. 2d 161, 174 (S.D.N.Y. 2002).

**SO ORDERED:**

_____
U.S.D.J.

Dated: Brooklyn, New York
       May 28, 2013